METROPOLIS COUNTRY CLUB, INC., Plaintiff, *v.* THOMAS E. LEWIS, as President of Building Service Employees International Union, Local 32E, A. F. of L., et al., Defendants.

Supreme Court, Special Term, Westchester County, May 21, 1952.

*Julius B. Sheftel* for plaintiff.

*Warren Whitfield Wells* for Thomas E. Lewis, defendant.

*Arnold Cohen* for Hotel Restaurant & Beverage Dispensers Union, Local 178, A. F. of L., defendant.

DAVIS, J. The plaintiff, a nonprofit membership corporation, operating a golf course in Westchester County, has instituted this action to enjoin two unions, the defendants, from picketing its premises. This is a motion for a temporary injunction.

The picketing was first commenced on or about April 28, 1951, when a number of pickets were placed at the entrance of

the plaintiff's grounds. These pickets were not and had not been employees of the plaintiff. The plaintiff's employees were nonunion, and apparently the relationship between the plaintiff and its employees had been harmonious. As a result of the picketing, a conference took place between the representatives of the plaintiff and of the unions, at the office of the plaintiff's attorneys. How this conference was brought about, and the discussions alleged to have taken place at such conference, are in dispute. Plaintiff alleges that a demand was made by the unions for recognition and a contract, although the unions did not represent nor claim to represent a majority of the plaintiff's employees. The unions deny that such a demand was made. At or about the time of this conference, and at or about this time the plaintiff applied to the New York State Labor Relations Board for an investigation and certification pursuant to section 705 of the Labor Law, the picketing was discontinued. On May 14, 1951, the State Labor Relations Board dismissed the plaintiff's application for certification and an election on the stated grounds that the unions did not claim to represent a majority of the employees, and that on the evidence submitted before said board, the facts did not clearly show that there had been an unequivocal demand for a contract. From May 15, 1951, to April 9, 1952, apparently no serious effort was made by the defendants to organize the plaintiff's employees. However, on April 10, 1952, approximately commensurate with the opening of the golf season, the picket line was re-established at the entrance to plaintiff's property. On April 15, 1952, the plaintiff again filed with the New York State Labor Relations Board a petition for investigation and certification of representation. This application was opposed by the unions and is still pending undetermined. It is such picketing that the plaintiff seeks to enjoin.

Plaintiff contends that such picketing has for its purpose the illegal and illegitimate object of coercing the plaintiff employer to interfere with its employees' free selection of a bargaining agent, which action on the part of the employer is prescribed by the Labor Law as an unfair labor practice and accordingly proscribed.

Such coercion, in subjecting plaintiff to economic pressure, is unlawful and can be enjoined without reference to section 876-a of the Civil Practice Act, where no lawful labor objective is sought by the defendant unions. (*Goodwin's, Inc.*, v. *Hagedorn*, 303 N. Y. 300.)

On the other hand, the defendants claim that the picketing is purely for organizational purposes and as such constitutes a labor dispute within the definition contained in section 876-a of the Civil Practice Act, and accordingly cannot be enjoined except on the conditions provided in such section of the Civil Practice Act.

Thus there is presented for the court's determination the question whether or not a labor dispute exists, depending for its answer on the ascertainment of the real purposes and intention of the defendants in picketing the plaintiff's establishment.

Let it be said at the outset that on the papers submitted a labor dispute within the ordinary comprehension of the term does not exist between the plaintiff and its employees. The plaintiff is and has been willing to accede to the legitimate wishes of its employees in respect to their representation. The plaintiff has twice sought a certification under the Labor Law, so that the emloyees might elect a bargaining agent of their own choosing. Apparently, however, the defendant unions do not feel that the time is propitious for such a free election on the part of the plaintiff's employees. The court further makes the presumptive determination necessary to grant plaintiff's motion for temporary relief, that even within the extended statutory connotation of the term, a labor dispute does not exist, for the reason the primary objective of the picketing here involved was not to organize plaintiff's employees, but to disorganize the plaintiff under economic pressure, to the end that the plaintiff would recognize or cause recognition to be given to the defendant unions.

Without making any attempt to delineate the bounds of proper peaceful picketing for organizational purposes, it may be said that the means adopted by the unions of publicizing the non-union status of employees must be wholly truthful in respect to the employer's position and that no overt act calculated to exert economic pressure on the employer shall be done by the union.

Sympathy for the workman cannot be extended to the point of denying to the employer the equal protection of our laws. " The widest latitude should be offered to workers to improve their conditions by organization, but in the extension of their privileges the reasonable rights of others guaranteed to all alike must not be subverted if the spirit of government is to be preserved." (*Michaels* v. *Hillman,* 112 Misc. 395, 410.)

Where the truth of the employer's position is not made known by the sign-carrying pickets, a subtle coercion takes place in that the forces of organized labor come into play and members of other unions rendering essential services to the employer refuse, presumptively of their own volition, to deal with the employer. Thus, in the present case, the picket signs read, '' This Club does not employ members of 32E Building Service Employees' International Union 32 '', and it is alleged in one of defendants' affidavits, '' As to any trucks or delivery wagons that drove to the entrance, there was never any threats made to the drivers, nor was there any loud language used. Most of them simply did not go in.'' Perhaps the employer is without remedy in such a situation. Here, however, the unions went further. The defendants' affidavit, above referred to, continues — '' Most of them simply did not go in. As to the others, *their attention was called* to the picket line and *the signs* that they carried, *and they were asked to respect the picket lines.*'' Thus, service people were informed of a half truth; were permitted to draw the erroneous impression from the signs that the plaintiff had an obligation to employ members of the local and failed in performing the same. Then they were asked to '' Respect the picket line '', or, in other words, not to cross the line and furnish the plaintiff with essential services. Therefrom is discerned the intention and purpose of the defendants to coerce the plaintiff and such acts and conduct lend credence to the plaintiff's version of the defendants' alleged demand for a contract. In *Bickford's, Inc.,* v. *Mesevich* (107 N. Y. S. 2d 369, 371), in which a temporary injunction was granted, it was said: '' In view of the misleading impression created by the pickets, the marked increase in numbers of pickets during the usual dining hours, and the urging of prospective customers to ' pass them by ', it would be extremely naïve to accept defendant's innocent protestations of acting for the lawful purpose of inducing the employees to join the union and of giving truthful information to the public. Transparently, the object is to affect the employer's business so adversely that the employer will bring pressure upon its employees to join defendant union.''

The plaintiff's motion is accordingly granted and the defendants' motion to dismiss the complaint is denied. Orders on notice.